TELFORD AVIATION, INC., Plaintiff,

v.

RAYCOM NATIONAL, INC. d/b/a
Raycom Media, Defendant.

No. 00–CV–158–B.

United States District Court,
D. Maine.

Nov. 21, 2000.

Robert E. Murray, Jr., Rudman & Winchell, Bangor, ME, for Plaintiff.

William G. Schaffer, Curtis, Thaxter, Stevens, Broder, & Micoleau, Portland, ME, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

SINGAL, District Judge.

Before the Court is Defendant's Motion to Dismiss for lack of personal jurisdiction

pursuant to Fed.R.Civ.P. 12(b)(2) (Docket # 2). Defendant filed its motion after removing this case from Kennebec County Superior Court on grounds of diversity jurisdiction. For the reasons laid out below, the Court GRANTS Defendant's Motion.

## I. STANDARD OF REVIEW

■ In any case arising under diversity jurisdiction, a federal court's personal jurisdiction is equivalent to that of the forum's state court. *See Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995). Thus, in this case, Maine's long-arm statute defines the limits of the Court's personal jurisdiction. *See* 14 M.R.S.A. § 704–A. Because the Law Court has determined that the limits of Maine's long-arm statute are coextensive with the limits of the Due Process Clause of the Fourteenth Amendment, the Due Process Clause actually determines the limits of the Court's jurisdictional reach in this diversity case. *See Electronic Media Int'l v. Pioneer Communications of America, Inc.,* 586 A.2d 1256, 1258 (Me.1991) (*citing Harriman v. Demoulas Supermarkets, Inc.,* 518 A.2d 1035, 1036 (Me.1986)).

■ On a motion to dismiss for lack of personal jurisdiction, the burden is ultimately on the plaintiff to persuade the Court that it has personal jurisdiction over the defendant. *See Massachusetts Sch. of Law v. American Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998). For purposes of assessing whether Plaintiff has met its burden, the Court applies a prima facie standard and accepts Plaintiff's proffered facts construing them in the light most favorable to Plaintiff. *See id.* Additionally, the Court considers any uncontradicted. facts put forward by Defendant. *See id.* Applying this formula, the Court sketches the relevant facts below.[1]

## II. BACKGROUND

Plaintiff, Telford Aviation, Inc. ("Telford"), is a Maine corporation with its principal place of business in Waterville, Maine. Defendant, Raycom Media, Inc. ("Raycom"), a Delaware corporation with its principal place of business in Montgomery, Alabama, owns and operates broadcast facilities in various states.[2] Raycom has never been incorporated in the State of Maine nor has it registered with the State of Maine as a foreign corporation. (Paul H. McTear, Jr. Aff. ¶ 4. (Docket # 2).) In fact, Raycom does not operate or advertise in Maine. (*Id.* ¶ 5.) Additionally, Raycom does not own or lease any property in the State of Maine nor do any

---

1. To determine the relevant jurisdictional facts, the Court has considered the affidavits and other materials submitted by the parties in addition to the pleadings. Such consideration of materials outside the pleadings in the context of a motion under Fed.R.Civ.P. 12(b)(2) does not require conversion to a motion for summary judgment. *See* Fed.R.Civ.P. 12(b) (explaining that conversion applies only when the motion to dismiss is based upon failure to state a claim upon which relief can be granted); *VDI Technologies v. Price,* 781 F.Supp. 85, 87 (D.N.H.1991) (explaining that a court may review supplemental materials when determining personal jurisdiction without converting the motion to dismiss to a motion for summary judgment).

2. The Court notes that although all parties agree that Raycom Media, Inc. is the entity that entered into the relevant contract in this case, there has been some confusion regarding the relationship between Raycom Media,

Inc. and Raycom National, Inc. Plaintiff originally captioned its case as "Raycom National, Inc. d/b/a Raycom Media, Inc." apparently believing that Raycom Media was a wholly-owned subsidiary of Raycom National. (*See* Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction at 1 n. 1.) In fact, Raycom National, Inc. is a wholly-owned subsidiary of Raycom Media, Inc. (*See* Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction and Inc. Mem. of Law at 1 n. 1.) Thus, the appropriate defendant to this action is Raycom Media, Inc. Pursuant to the parties' suggestion, the Court addresses the merits of Defendant's pending motion by treating Raycom Media, Inc., a Delaware Corporation with its principal place of business in Montgomery Alabama, as the Defendant. (*Id.; see also* Pl.'s Mem. of Law in Opp. To Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction at 1 n. 1.)

of its agents or representatives live or work in Maine.

In the Fall of 1997, Raycom contacted Telford in Maine after learning that Telford provided aircraft charter services for a plane based in Montgomery, Alabama. (*Id.* ¶ 6.) In May 1998, Telford entered into a contract with Raycom under which Telford agreed to supply charter aircraft services to Raycom. (*See* Compl.Ex. A (Docket # 1) (*hereinafter* Contract).) Under their contract, Raycom agreed to purchase at least 250 hours of flight time from Telford during the following year at a rate of $1250.00 per hour. Telford alleges in its complaint that, in fact, Raycom did not purchase the minimum number of hours and, as a result, Raycom owes Telford a balance of $90,500.00 on the contract. (Compl. ¶¶ 6–7 (Docket # 1).)

The contract, which was executed in Alabama, contains a choice of law provision that calls for the contract to be governed by Alabama law. (*See* Contract ¶ 17.) Pursuant to the contract, Raycom repeatedly contacted Telford's office in Waterville, Maine by mail, fax and phone to make arrangements for charter flights. None of the flights chartered ever traveled to or from Maine. Rather, all of the charter trips originated from Raycom's principal place of business in Montgomery, Alabama. (*See* Ex. A attached to Telford M. Allen III Aff. (Docket # 5).)

## III. DISCUSSION

To satisfy the requirements of due process for specific jurisdiction over Raycom, the Court considers "three distinct components." [3] *Massachusetts Sch. of Law*, 142 F.3d at 35 (*quoting Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138,

144 (1st Cir.1995)). The first, titled "relatedness," asks "whether the defendant's forum-based activities are instrumental in the formation of the contract." See *Massachusetts Sch. of Law*, 142 F.3d at 35 (citation and internal quotations omitted). The second component looks at whether the defendant has established "minimum contacts" with the forum by purposely availing himself of the benefits of doing business in the forum. *See id.* Finally, the Court considers the "reasonableness" of the defendant being required to litigate in the forum. *Id.* The Court considers each component in turn.

### A. Relatedness

■ Under this factor, the Court considers any nexus—between the forum state and the formation, performance or breach of the contract—that would give the forum state a legitimate interest in litigation arising out of the alleged breach of contract. *See Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289–90 (1st Cir.1999). A prima facie showing of such a nexus requires more than "the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff." *See id.* at 290. (*discussing and citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

With regard to formation, Plaintiff asserts that Raycom initiated contract negotiations by contacting Telford in Maine and notes that the contract explicitly lists Waterville, Maine as Telford's place of business. On the other hand, the uncontradicted facts submitted by Defendant demonstrate that the relevant contract was "formed and executed by Raycom in

---

**3.** The Law Court has previously adopted a similar three-part test for considering whether a court's exercise of personal jurisdiction comports with due process. The Law Court specifically requires that

 (1) Maine have a legitimate interest in the subject matter of the litigation; (2) the defendant, by [its] conduct, reasonably could have anticipated litigation in Maine; and

(3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice.

*Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995). For purposes of this case, the difference between the test laid out by the Law Court and the three components laid out by the First Circuit is purely semantic.

Montgomery, Alabama." (McTear Aff. ¶ 6.) The contract explicitly states that it "shall be governed by and construed in accordance with the laws of the state of Alabama." (Contract ¶ 17.) Moreover, none of the air charter services rendered pursuant to the contract involved flights to or from Maine. That said, Raycom did frequently contact Telford in Maine to reserve charter flights.

With regard to breach of the contract, the alleged breach arises from Raycom's failure to pay the balance due on the contract despite Raycom's failure to purchase the required minimum number of hours. Arguably, this breach occurred in Maine to the extent that the balance due has not been sent to Telford's office in Waterville, Maine. However, "the location where payments are due under a contract ... alone does not possess decretory significance." *Phillips Exeter*, 196 F.3d at 291 (citations omitted).

Therefore, the Court is left to consider any nexus between the contract and the State of Maine based on Raycom's failure to deliver payment to Maine in combination with Raycom's phone calls and faxes to Maine requesting air flight services in Alabama. The Court concludes that these contacts create a tenuous nexus between Raycom and the forum. Nonetheless, the Court assumes, for the moment, Plaintiff has satisfied its burden of making a prima facie showing of relatedness based on these slim facts.

B. Purposeful Availment

 Next, the Court considers whether Raycom's contacts with Maine, described above, constitute purposeful availment of the benefits and protections of Maine law such that Raycom, by its conduct, reasonably could have anticipated litigation in Maine. The purposeful availment requirement protects defendants from jurisdiction based solely on "random, fortuitous, or

attenuated contacts" or "the unilateral activity of another party." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (citations and internal quotations omitted).

Thus, the Court must consider whether Raycom's phone, fax, and mail communications with Telford, to initiate negotiations for a contract and later to request services pursuant to the contract, constitute purposeful availment.[4] The fact that Raycom's contacts took the form of mail or wire communications rather than physical presence is not determinative. *See Burger King*, 471 U.S. at 476, 105 S.Ct. 2174.

The Court notes at the outset that the bulk of the relevant actions took place in Alabama. *See Phillips Exeter*, 196 F.3d at 290–91. Defendant's first contact with Maine occurred after it expressed interest in chartering an aircraft in Montgomery, Alabama and was directed to contact Telford in Maine. Defendant subsequently had at least thirty-six documented contacts with Telford's offices in Maine. Through these subsequent phone calls and faxes, Raycom scheduled flight services pursuant to the contract. None of these flights departed from or arrived in Maine.

Under these circumstances, the Court concludes that Raycom's contacts with Maine were fortuitous and resulted from Telford's decision to handle contracts and to schedule charter flights originating in Alabama from its Waterville, Maine offices. *See, e.g., Cives Corp. v. Am. Elec. Power Co.*, 550 F.Supp. 1155, 1158 (D.Me. 1982). Raycom's contacts did not create continuing obligations to Maine consumers, nor did Raycom benefit from the protections of Maine law through its phone calls and faxes to Telford in Maine. *See Phillips Exeter*, 196 F.3d at 292. Thus, Raycom could not have reasonably anticipated litigation in Maine as a result of these contacts.

---

4. The Court does not consider the breach because the First Circuit has specifically held that "the in-forum effects of extra-forum ac-

tivities [do not] suffice to constitute minimum contacts." *Massachusetts Sch. of Law*, 142 F.3d at 36.

## C. Reasonableness

■ Considering all of the facts surrounding the formation and performance of this contract and the limited nature of Raycom's contacts with Maine, the Court concludes that the assertion of specific personal jurisdiction over Raycom would not comport with "fair play and substantial justice."[5] *See Burger King*, 471 U.S. at 486, 105 S.Ct. 2174 (citing *Kulko v. Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). Therefore, it is unreasonable to require Raycom to defend this breach of contract claim in Maine.

## IV. CONCLUSION

For these reasons, the Court GRANTS Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and hereby DISMISSES Plaintiff's case WITHOUT PREJUDICE so that Plaintiff may file in a court that has personal jurisdiction over all parties.

SO ORDERED.

See also: 122 F.Supp.2d 57.

---

**5.** Plaintiffs insist that with regard to this third component the Court must place the burden on Defendant pursuant to the burden shifting approach adopted by the Law Court. (*See* Pl.'s Mem. of Law in Opp. To Def.'s Mot. to Dismiss at 1 (Docket # 4) (*citing Electronic Media Int'l v. Pioneer Communications of America, Inc.*, 586 A.2d 1256, 1258 (Me. 1991)).) The First Circuit has neither adopted nor rejected any burden shifting on this third element. *See Massachusetts Sch. of Law*, 142 F.3d at 34 (stating "the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists"). Nonetheless, the Court's conclusion on this prong would be the same regardless of whether it placed the burden of persuasion on Plaintiff or Defendant.